**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL JOHNSON,** | ) | |
| **as an individual, and on behalf of all** | ) | |
| **others similarly situated,** | ) | |
|     **Plaintiff,** | ) | **Case No.** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ATKINS NUTRITIONALS, INC.,** | ) | |
| | ) | |
|     **Defendant.** | ) | |

## NOTICE OF REMOVAL

Defendant, Atkins Nutritionals, Inc. ("Atkins"), pursuant to 28 U.S.C. §§ 1367, 1441, and 1446, submits this Notice of Removal of a civil action filed in Cole County Circuit Court, *Michael Johnson v. Atkins Nutritionals, Inc.,* Case No. 16AC-CC00255 ("the State Court Action"), to this Court. In support of this Notice of Removal, Atkins states:

**I.  Procedural History and Timeliness and Propriety of Removal**

1.  Plaintiff, Michael Johnson's ("Plaintiff") state-court petition alleges that Atkins improperly labels its food products with a "net carbohydrates" miscalculation. *See* Petition at p. 1.[1] The Petition asserts: a violation of the Missouri Merchandising Practices Act ("MMPA") (Count I), breach of express warranty (Count II), breach of the implied warranty of merchantability (Count III), and unjust enrichment (Count IV). It seeks relief individually and on behalf of a putative class consisting of "[c]itizens of Missouri who have purchased Atkins' products labeled and marketed with the 'net carbs' calculation that contained sugar alcohols in the State of Missouri within the five-year period immediately preceding the filing of this action." *Id.* at ¶ 58.

---

[1] As required by 28 U.S.C. § 1446(a), the Petition is attached in Exhibit A.

1

2.      As Atkins is the sole Defendant in the State Court Action, all defendants have joined in this Notice of Removal.

3.      On June 24, 2016, Atkins was served with the Summons and Petition in the State Court Action. Therefore, this Notice of Removal, filed within 30 days of service, is timely filed under 28 U.S.C. § 1446(b). *See also* Fed. R. Civ. P. 6(a)(1)(C).

4.      The Cole County Circuit Court is located within this District. Venue is proper because this is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

5.      Pursuant to 28 U.S.C. § 1446(a), a copy of all process and pleadings served on Atkins in the State Court Action is attached hereto as Exhibit A. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on counsel for Plaintiff, and a copy is being filed with the Clerk of the Cole County Circuit Court.

## II. <u>First Basis for Removal: Diversity Jurisdiction Under CAFA</u>

6.      District courts have original jurisdiction over any class action when: (1) the parties are minimally diverse (*i.e.*, one plaintiff is diverse from one defendant); (2) the putative class consists of 100 or more members; and (3) the amount in controversy exceeds $5,000,000, exclusive of interests and costs. *See* 28 U.S.C. §§ 1332(d)(2) and (5)(B).

7.      The Supreme Court has held that, in evaluating removal pleadings to determine if the Class Action Fairness Act ("CAFA") jurisdiction is established, district courts should "apply the same liberal [pleading] rules" as would pertain to other pleadings. *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 549 (2014).

8.      All three conditions for removal are satisfied in this case.

Case 2:16-cv-04213-MDH   Document 1   Filed 07/22/16   Page 2 of 39

A.     **Minimal Diversity Between the Parties Exists**

9.     CAFA requires only minimal diversity between the parties. 28 U.S.C. § 1332(d)(2).  In the Petition, Plaintiff alleges that he is a resident of Cole County, Missouri and presumptively and necessarily a citizen of the State of Missouri. Pet. ¶¶ 1, 58, 63, 64.[2]

10.     Atkins is a New York corporation.  *See, e.g.*, New York State, Department of State, Division of Corporations, "Entity Information" for Atkins Nutritionals, Inc. (accessed July 22, 2016), attached Exhibit B; Office of the Secretary of State of Colorado, "Certificate of Fact of Good Standing" for Atkins Nutritionals, Inc., attached as Exhibit C ("Atkins Nutritionals, Inc. is an entity formed or registered under the law of New York.")[3]

11.     Atkins' principal place of business is in Denver, Colorado.  *See, e.g.*, Pet. ¶ 2; Exhibit B (New York Entity Information listing principal offices in Denver.)

12.     Because Atkins is incorporated in New York and its principal place of business is in Colorado, Atkins is a citizen of both Colorado and New York for diversity purposes.  *See* 28 U.S.C. § 1332(c)(1.)

13.     Since Plaintiff and Atkins are citizens of different states, minimal diversity exists.

B.     **The Putative Class Consists of at Least 100 Members**

---

[2] Plaintiff also seeks to represent a putative class of citizens of Missouri.  *See* Pet. ¶ 58.  The Petition also pleads that Plaintiff's claims are typical of the putative class' claims (Pet. ¶ 63) and that he is an adequate class representative (Pet. ¶ 64), which is defined to include only citizens of Missouri (Pet. ¶ 58.)

[3] The Court may take judicial notice of this fact pursuant to Federal Rule of Evidence 201(b)(2), which permits the Court to take judicial notice of facts that are accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Publically accessible information regarding a business's state of incorporation and principal place of business such as that reflected in Exhibits B and C may be judicially noticed.  *See, e.g.*, *Johnson v. Gawker Media, LLC*, No. 4:15-cv-1137 CAS, 2016 WL 193390, at *1 (E.D. Mo. Jan. 15, 2016) (taking judicial notice of defendant's state of incorporation and principal place of business pleaded in Notice of Removal.)

3

14.    CAFA also requires that the putative class consist of at least 100 members. 28 U.S.C. § 1332(d)(5)(B). Plaintiff claims to bring this action on behalf of "[c]itizens of Missouri who have purchased Atkins' products in the State of Missouri labeled and marketed with 'net carbs' calculation that contained sugar alcohols within the five-year period immediately preceding the filing date of this action." Pet. ¶ 58.[4] Although the Petition pleads that the "precise number of Class members and their identities are unknown," it also asserts that the "[c]lass members are so numerous that their individual joinder is impracticable." Pet. ¶ 61. As shown in the Declaration of Atkins' Vice President of Marketing and Chief Insights Officer, Linda Zink, attached as Exhibit D ("Zink Decl"), consumers in Missouri purchased more than $48,000,000.00 in Atkins products containing the net carbs calculus during the relevant time period. *Id.* ¶ 14. And as Ms. Zink testifies, it would be impossible for fewer than 100 consumers to have purchased for consumption[5] this volume of Atkins products sold. *Id.* Thus, her Declaration and common sense lead to the inescapable and reasonable conclusion that the putative class consists of at least 100 Missourians who have purchased the relevant Atkins products over the five-year period preceding the filing of the Petition.[6]

**C.    The Amount in Controversy Exceeds $5,000,000**

15.    Lastly, CAFA requires that the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2.) "Compensatory damages,

---

[4] Atkins disputes that putative class is ascertainable because it is impossible to identify the citizenship of consumers who purchased Atkins products during the relevant time period.

[5] The MMPA applies only to sales of merchandise purchased by individuals "primarily for personal, family or household purposes." RSMO §§ 407.010, 407.025.

[6] In *Dart Cherokee*, the Supreme Court held that a notice of removal may provide the amount in controversy if the plaintiff's petition fails to do so. 135 S. Ct. at 551. Thus, it follows that since the Petition fails to plead the size of the putative class, Atkins' notice of removal may properly include this information.

4

punitive damages, and statutory attorney's fees all count towards the amount in controversy." *Harrington Enters. v. Safety-Kleen Sys.*, 42 F. Supp. 3d 1197, 1199 (W.D. Mo. 2013) (citing *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887-88 (8th Cir. 2013).) When determining the amount in controversy, the issue "'is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are.'" *Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009) (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).) A defendant's notice of removal need only include a plausible allegation that the amount in controversy jurisdictional element is met. *Pudlowski v. St. Louis Rams, LLC*, No. 16-8009, 2016 WL 3902660, at *1 (8th Cir. July 19, 2016.) While Plaintiff's Petition does not specify the alleged damages suffered by the putative class, the certain conclusion from the relief sought in the Petition is that the total value of the amount in controversy exceeds $5,000,000.

16.     To redress Count I for alleged violations of the MMPA, Plaintiff seeks, on behalf of all members of the putative class, actual damages, a declaration of conduct violative of the MMPA, an injunction, disgorgement of profits, restitution, and reasonable attorney's fees. Pet. ¶ 77. Plaintiff also seeks an injunction enjoining Atkins from allegedly "overcharging" consumers for products bearing the net carbs calculation, attorneys fees, and costs and expenses for Count IV, Unjust Enrichment. Pet. ¶ 99.

17.     As noted above, Atkins sold more than $48,000,000 of product containing the net carbs calculation in Missouri in the five years preceding this suit, and at least $6,000,000 in each year of the putative class period. Decl. of L. Zink ¶ 18. These aggregate and annual product sales make clear that the amount in controversy exceeds $5,000,000 because Plaintiff requests actual damages, punitive damages, equitable relief and attorneys' fees based on these sales.

5

18.     Plaintiff's own allegations further demonstrate that the putative class seeks more than $5,000,000 in actual damages.  The Petition asserts that Plaintiff and each individual member of the proposed class have "individually incurred damages in an amount less than $75,000."  Pet. ¶ 6.  Assuming even that a bare minimum of 100 Missourians purchased the Atkins products at issue over the five-year period preceding the filing date[7], the amount in controversy requirement is easily met.  Multiplying the minimum 100 putative class members by $74,999 per putative class member, the amount in controversy for purposes of CAFA is $7,499,900, which is well in excess of the $5,000,000 jurisdictional threshold.  *See Stafford v. Whole Foods Mkt. Cal., Inc.,* No. 4:14cv00420 JLH, 2014 WL 4755988, at *3 (E.D. Ark. Sept. 24, 2014) (finding in a product labeling case that "[t]aking the complaint at face value, if each class member has a claim that might be as much as $74,999.00, and if the class is in the thousands, a jury might conclude that the class suffered damages of more than $5,000,000.00," and therefore holding that removal was proper.)

19.     Punitive damages also are included in determining the amount in controversy.  *See, e.g.*, *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887-88 (8th Cir. 2013.)  The Petition seemingly asserts a claim for punitive damages under the MMPA (*Watson v. Wells Fargo Home Mortg.,* 438 S.W.3d 404, 407 (Mo banc. 2014)) by pleading that Atkins' conduct was "willful and knowing."  Pet. ¶ 76.  In this case, an award of punitive damages equal to one year in product sales alone (without regard to the value of the equitable relief and the attorneys' fees sought in the Petition) would push the amount in controversy over $6,000,000.  *See also Bass v. Carmax Auto Superstores, Inc.*, No. 07-0883-CV-W-ODS, 2008 WL 441962, at *2  (W.D. Mo. Feb. 14, 2008) (noting that if a class of 4,000 members had total damages of $650,000, the "total

---

[7] As demonstrated in Paragraph 14, *supra*, the number of putative class members actually far exceeds this number.

punitive damages and attorneys fees could easily (and legally) be sufficient to bring the total amount in controversy over the [$5,000,000] jurisdictional requirement")

20.     When the Petition's prayer for equitable relief also is considered in tallying the amount in controversy, there is no doubt that the total amount of damages a fact finder could possibly award exceeds $5,000,000.  The Supreme Court has explained that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977); *see also Chochorowski v. Home Depot USA*, 585 F. Supp. 2d 1085, 1094 (E.D. Mo. 2008) (the appropriate measure of equitable relief for CAFA jurisdictional purposes is "the value to the plaintiff of the right sought to be enforced.")

21.     The Petition requests that, "[a]t a minimum, . . . Defendant should cease labeling its products with a 'net carb' calculation that omits sugar alcohols from its calculation." Pet. ¶ 56. As noted above, the amount of product at issue constitutes approximately $6,000,000 in annual sales.  *See* ¶ 17, *supra.* The value of the relabeling of such products going forward is not insubstantial and, when added to the amount-in-controversy calculus, further clears the $5,000,000 hurdle.

22.     Plaintiff's demand for attorney fees is additionally included when determining the amount in controversy for CAFA jurisdictional purposes.  *Hartis v. Chicago Title Ins. Co.*, 656 F.3d 778, 781-782 (8th Cir. 2009); *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007) (attorneys' fees "can exceed six figures in a class action and are properly aggregated and considered for purposes of determining the amount in controversy under CAFA.")  Attorneys' fees in three recent MMPA cases brought in Missouri each exceeded $100,000.  *See, e.g.*, *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 195 (Mo. App. W.D. 2013) ($165,350); *Heckadon v.*

*CFS Enters.*, 400 S.W.3d 372, 377 (Mo. App. W. D. 2013) ($114,390); *Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024, 1025 (8th Cir. 2000) ($125,000). Indeed, the Missouri Supreme Court has affirmed attorneys' fee awards as high as $6,000,000 in an MMPA case. *Berry v. Volkswagen Grp. Of Am., Inc.,* 397 S.W.3d 425, 429 (Mo. banc 2013).[8] Thus, if the putative class were certified and this case were to proceed to judgment in the class' favor, it is plausible that, in addition to the other recoveries detailed above, Plaintiff could also seek an attorneys' fee that also may be included in the amount in controversy evaluation.

23.    Because the CAFA jurisdictional requirements are all met, this case is properly removable to this Court under 28 U.S.C. § 1332(d)[9].

### III. Second Basis for Removal:  Diversity Jurisdiction Under 28 U.S.C. § 1332(a)

24.    Diversity jurisdiction also exists under 28 U.S.C. § 1332(a) because Plaintiff is completely diverse from Atkins (*see* ¶¶  9-13, *supra*) and the amount in controversy asserted in the Petition exceeds $75,000 (*see* ¶¶ 17-22, *supra*).

25.    Complete diversity is required under 28 U.S.C. § 1332(a.)  As noted above, Plaintiff alleges he is a resident of Cole County, Missouri and by reasonable and necessary implication a citizen of  Missouri.  *See supra* at ¶  9.  Atkins is a New York corporation with its principal place of business in Denver, Colorado.  *See supra* at ¶¶ 10-11.  Thus, Atkins is a citizen of both Colorado and New York for diversity purposes. *See supra* at ¶ 12. The parties are

---

[8]  "[I]n jurisdictions, like Missouri, that do not require a claimant to state the amount of damages sought," defendants can show the amount in controversy by pointing to "damage recoveries in similar cases."  *Hoffmann v. Empire Mach. & Tools Ltd.*, No. 4:10-cv-00201-NKL, 2010 WL 2216631, at *2 (W.D. Mo. May 28, 2010.)

[9] If the Court has any doubt regarding whether the jurisdictional requirements for removal are met, the Court may permit jurisdictional discovery to enable Atkins to establish federal jurisdiction.  *Pudalowski*, 2008 WL 3902660, at *1 (post-removal jurisdictional discovery is appropriate because "jurisdiction is (1) important, (2) often fact-intensive, and (3) only required to be alleged plausibly in a notice of removal.")

completely diverse, and Atkins is not "a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

26.     The amount in controversy is also sufficient. As explained above, the amount in controversy is far above the $75,000 threshold necessary to establish diversity jurisdiction.

WHEREFORE, for the foregoing reasons, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Atkins respectfully requests that the above-captioned civil action proceed in the United States District Court for the Western District of Missouri, Western Division, as an action properly removed thereto.

Dated: July 22, 2016

Respectfully submitted,

By:     /s/ Greg T. Wolf
        Gregory T. Wolf
        Carly D. Duvall
        Dentons US LLP
        4520 Main Street, Suite 1100
        Kansas City, MO  64111
        TELEPHONE (816) 460-2400
        FAX (816) 531-7545
        gregory.wolf@dentons.com
        carly.duvall@dentons.com

        Charles A. Newman
        One Metropolitan Square
        211 N Broadway
        Suite 3000
        St. Louis, MO 63102-2741
        TELEPHONE (314) 259-5399
        FAX (314) 259-5959
        charles.newman@dentons.com

        ATTORNEYS FOR DEFENDANT ATKINS
        NUTRITIONALS, INC.

9

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of July, 2016, the foregoing document was filed electronically with the above-captioned Court's CM/ECF system, which effected service on the all registered CM/ECF users in this case. The undersigned further certifies that, pursuant to Fed. R. Civ. P. 5, the foregoing document was served via U.S. mail, first-class postage prepaid, and by email, on the following:

Matthew L. Dameron
WILLIAMS DIRKS DAMERON LLC
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Telephone: (816) 876-2600
Facsimile: (816) 221-8763
matt@willliamsdirks.com

Jason "Jay" Barnes
BARNES & ASSOCIATES
219 E. Dunklin Street, Suite A
Jefferson City, Missouri 65101
Telephone: (573) 634-8884
Facsimile: (573) 635-6291
jaybarnes5@zoho.com

Counsel for Plaintiff and the Proposed Class


_____/s/ Greg T. Wolf_____
Attorney for Defendant Atkins

# EXHIBIT A

**Your Missouri Courts** .net

Search for Cases by: Select Search Method...

Judicial Links | eFiling | Help | Contact Us | Print     GrantedPublicAccess Logoff CADUVALL11

**16AC-CC00255 - MICHAEL JOHNSON V ATKINS NUTRITIONALS, INC. (E-CASE)**

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |
|---|---|---|---|---|---|---|---|---|

This information is provided as a service and is not considered an official court record.

**Click here to eFile on Case** **Click here to Respond to Selected Documents** Sort Date Entries: ● Descending ○ Ascending  Display Options: All Entries ▼

| | |
|---|---|
| 07/11/2016 | ☐ **Corporation Served** |
| | Document ID - 16-SMCC-336; Served To - ATKINS NUTRITIONALS, INC.; Server - ; Served Date - 23-JUN-16; Served Time - 14:09:00; Service Type - Special Process Server; Reason Description - Served; Service Text - Melissa Brokstone left summons with receptionist Taylor Phillips |
| | ☐ **Notice of Service** |
| | Summons Return Atkins Nutritional |
| |  **Filed By:** JASON OWEN BARNES |
| |  **On Behalf Of:** MICHAEL JOHNSON |
| | |
| 06/17/2016 | ☐ **Order - Special Process Server** |
| | ☐ **Summons Issued-Circuit** |
| | Document ID: 16-SMCC-336, for ATKINS NUTRITIONALS, INC.,Attorney to print two copies of service document created to issue for service and return. Service copy to include filings to serve, if applicable. |
| | |
| 06/15/2016 | ☐ **Filing Info Sheet eFiling** |
| |  **Filed By:** JASON OWEN BARNES |
| | ☐ **Proposed Order Filed** |
| | Proposed Order for Special Process Server |
| |  **Filed By:** JASON OWEN BARNES |
| |  **On Behalf Of:** MICHAEL JOHNSON |
| | ☐ **Motion Special Process Server** |
| | Motion For Special Process Server. |
| |  **Filed By:** JASON OWEN BARNES |
| | ☐ **Confidential Address Filed** |
| | Confidential Case Filing Information Sheet. |
| |  **Filed By:** JASON OWEN BARNES |
| | ☐ **Pet Filed in Circuit Ct** |
| | Class Action Petition. |
| |  **Filed By:** JASON OWEN BARNES |
| | ☐ **Judge Assigned** |

Electronically Filed - Cole Circuit - June 15, 2016 - 02:59 PM

**IN THE CIRCUIT COURT OF COLE COUNTY, MISSOURI**

| | | |
|---|---|---|
| PLAINTIFF MICHAEL JOHNSON, | ) | |
| as an individual, and on behalf | ) | |
| of all others similarly situated, | ) | |
|     Plaintiff | ) | |
| | ) | |
|     v. | ) | Case No. |
| | ) | |
| ATKINS NUTRITIONALS, INC., | ) | |
|     Defendant | ) | |
| | ) | |
| SERVE DEFENDANT AT: | ) | **CLASS ACTION PETITION** |
| 1050 17th Street, Ste 1000 | ) | |
| Denver, Colorado 80265-1001 | ) | **JURY TRIAL DEMANDED** |

<u>**CLASS ACTION PETITION**</u>

This case concerns the labeling used by Atkins Nutritionals, Inc. when it touts its products as having low "net carbs" even though the products contain sugar alcohols. When it calculates "net carbs" for labeling purposes, Atkins subtracts carbohydrates associated with sugar alcohols from its calculation, even though sugar alcohols contribute to a product's carbohydrates and Atkins itself has characterized the term "net carbs" as "imprecise." Simply put, the calculation that Atkins employs is wrong, meaning that the labeling and representations regarding net carbs also are wrong. Atkins conceals these facts from consumers in violation of Missouri law.

Plaintiff, through undersigned counsel, hereby files this Class Action Petition, individually and on behalf of all others similarly situated, who purchased food products which Atkins touted as having low "net carb" totals.

**THE PARTIES**

1.    Plaintiff Michael Johnson is a resident of Cole County, Missouri who purchased Atkins food products.

1

2.      Defendant is a Colorado corporation with headquarters located at 1050 17th Street, Ste. 1000, Denver, Colorado 80265-1001.

## JURISDICTION AND VENUE

3.      This Court has general jurisdiction under Mo. Const. Art. V, § 14.

4.      The Court may exercise jurisdiction over Atkins because it has sufficient minimum contacts with Missouri, and intentionally avails itself of the markets within Missouri through the promotion, sale, marketing and distribution of its products.

5.      A substantial portion of the events complained of herein occurred in Cole County, Missouri; therefore, venue is proper in Cole County, Missouri.

6.      Plaintiff and each member of the proposed Class have individually incurred damages in an amount less than $75,000.  Neither Plaintiff nor any member of the proposed Class seeks individual damages exceeding $75,000 nor do their damages individually exceed $75,000, inclusive of interest and attorneys' fees and all relief of any nature sought hereunder. Plaintiff and each member of the proposed Class do not seek any form of "common" recovery, but rather individual recoveries not to exceed $75,000 for any member of the Class.

## FACTUAL ALLEGATIONS

7.      Defendant Atkins has concealed material facts from consumers in that it has failed to disclose that its "net carb" calculation is misleading because sugar alcohols have a carbohydrate impact that should be included in any carbohydrate calculation.

8.      Furthermore, Atkins made false, misleading statements to deceive consumers into purchasing its products under the belief that they are extremely low in carbohydrates, when, in fact, they are not.

2

Electronically Filed - Cole Circuit - June 15, 2016 - 02:59 PM

9.      Defendant Atkins' fraudulent market scheme includes touting a low "net carb" total for many products, but the phrase "net carb" is highly deceiving, and, as calculated on Atkins' product labels, fraudulent. This is particularly true where Atkins conceals the true nature of sugar alcohols, and conceals the fact that it subtracts sugar alcohols from its total carbohydrate calculation to reach its "net carbs" calculation.

10.     Defendant Atkins is the company which was formed by the late Dr. Robert Atkins (hereinafter "Dr. Atkins") to promote the sale of books and food items related to the "Atkins Diet," a low to no carbohydrate diet.

11.     To follow the Atkins Diet, users must forsake carbs which are present in most processed foods in the average American's diet. In 1999, at the time the Atkins Diet was gaining sweeping popularity, the late Dr. Atkins informed adherents that the most popular artificial sweeteners that American manufacturers use to replace conventional sugars were not approved for use in the Atkins Diet. Dr. Atkins wrote, "Sweeteners such as sorbitol, mannitol, and other hexitols [i.e., sugar alcohols] are not allowed." *See* Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (Rev.) at p. 100 (1999).

12.     In 2002, Dr. Atkins revised this prohibition. He stated, "certain sugar alcohols such as maltitol do not affect blood sugar and are acceptable." Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (3rd ed.) at p. 112 (2002).

13.     What changed? Between 1999 and 2002, Atkins had established a growing line of food products that included sugar alcohols.

### Atkins' Specific Claims on "Net Carbs"

14.     Atkins' website at www.atkins.com explains its definition of "net carbs" as "the total carbohydrate content of the food minus the fiber content and sugar alcohols." It further

3

claims, "The Net Carbs number reflects the grams of carbohydrate the significantly impact your blood sugar level and therefore are the only carbs you need to count when you do Atkins."

15.     Atkins claims its "Net Carb" calculation is based on "science."

16.     Atkins further claims:

> Net Carbs are the carbohydrates that significantly impact the blood-sugar level; they're the only carbs that count when following Atkins. The good news is that the grams of carbohydrate in fiber, glycerine, and sugar alcohols don't break down and convert to blood sugar and need not be counted by people on the ANA. … So Net Carbs represent the number of grams of total carbohydrate minus those that do not impact blood sugar.[1]

17.     Atkins manufactures, distributes, markets, advertises, and sells products containing sugar alcohols as replacements for ordinary carbohydrates.

18.     Maltitol is the sugar alcohol of Atkins' choice. For example, it is a leading ingredient in the following Atkins' products: (a) Blueberry Greek Yogurt Bar; (b) Chocolate Peanut Butter Pretzel Bar; (c) Strawberry Almond Bar; (d) Cinnamon Bun Bar; (e) Chocolate Chip Granola Bar; (f) Chocolate Peanut Butter Bar; (g) Cookies n' Crème Bar; (h) Mudslide Bar; (i) Chocolate Chip Cookie Dough Bar; (j) Triple Chocolate Bar; (k) Caramel Chocolate Peanut Nougat Bar; (l) Caramel Double Chocolate Crunch Bar; (m) Cashew Trail Mix Bar; (n) Coconut Almond Delight Bar; (o) Dark Chocolate Almond Coconut Crunch Bar; (p) Caramel Chocolate Nut Roll; (q) Dark Chocolate Decadence Bar; (r) Chocolate Chip Crisp Bar; (s) Chocolate Hazelnut Bar; (t) Chocolate Oatmeal Fiber Bar; (u) Cranberry Almond Bar; (v) Chocolate Covered Almonds; (w) Chocolate Candies; (x) Chocolate Peanut Candies; (y) Caramel Nut Chew Bar; (z) Chocolate Caramel Mousse Bar; (aa) Chocolate Coconut Bar; (bb) Nutty Fudge Brownie; (cc) Peanut Butter Cups, and (dd) Peanut Caramel Cluster Bar.

---

[1]     *See* http://www.atkins.com/Science/Articles---Library/Carbohydrates/The-Blood-Sugar-Roller-Coaster--Excess-Carbs,-Exce.aspx

4

Electronically Filed - Cole Circuit - June 15, 2016 - 02:59 PM

19.  The Atkins "net carb" formula subtracts all grams of sugar alcohol from carbohydrates. For example, its "Chocolate Candies" product claims to have just "1g Net Carb."



20.  The ingredients panel for Atkins' Chocolate Candies reveals the following:

5

**Nutrition Facts**

Serving Size 1 pack (28g)

**Amount Per Serving**

| Calories 110 | Fat Cal. 60 |
| --- | --- |
| | **% Daily Value\*** |
| **Total Fat** 7g | 11% |
| Saturated Fat 4.5g | 23% |
| Trans Fat 0g | |
| **Cholesterol** <5mg | 1% |
| **Sodium** 5mg | 0% |
| **Potassium** 60mg | 2% |
| **Total Carbohydrate** 19g | 6% |
| Dietary Fiber 4g | 16% |
| Sugars 1g | |
| ★ Sugar Alcohols 14g | |
| **Protein** 1g | 1% |

| Vitamin A 0% | • | Vitamin C 0% |
| --- | --- | --- |
| Calcium 2% | • | Iron 2% |

Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs.

| | Calories: | 2,000 | 2,500 |
| --- | --- | --- | --- |
| Total Fat | Less than | 65g | 80g |
| Saturated Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Potassium | | 3,500mg | 3,500mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |
| Protein | | 50g | 65g |

★ Sugar Alcohols total
   includes 0g of glycerin.

INGREDIENTS: CHOCOLATE COATING [MALTITOL, COCOA BUTTER, INULIN, UNSWEETENED CHOCOLATE, WHOLE MILK POWDER, MILK FAT, COCOA POWDER (PROCESSED WITH ALKALI), SOY LECITHIN, VANILLA, NATURAL FLAVORS, SUCRALOSE], MALTITOL, LESS THAN 1% OF PURE VANILLA EXTRACT, CONFECTIONER'S GLAZE, CARNAUBA WAX, BEESWAX, TITANIUM DIOXIDE COLOR, YELLOW 5 LAKE, RED 40 LAKE, BLUE 1 LAKE, BLUE 2 LAKE, YELLOW 6 LAKE, YELLOW 6, GUM ARABIC.   FR01
**CONTAINS MILK AND SOY.**
**THIS PRODUCT IS MANUFACTURED IN A FACILITY THAT USES PEANUTS, OTHER TREE NUTS AND WHEAT.**

21.     Thus, Atkins' starts with 19g of total carbs then subtracts 4g of Dietary Fiber and 14g of Sugar Alcohols to arrive at a Net Carbs claim of just 1 gram. The ingredient list reveals "maltitol" is the largest content of the product.

22.     By this calculation, Atkins assigns a carbohydrate value of zero to maltitol and any other sugar alcohols for this product.

23.     But this method of calculation conflicts with the method espoused by Dr. Atkins in his books. Indeed, Dr. Atkins stated that to arrive at net carbs, an individual should subtract only carbohydrates associated with fiber. He stated: "Basically, you can deduct the grams of fiber from the food's total carb count. I call the net number of grams, 'The carbs that count when you do Atkins.'" Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (3rd ed.) at p. 68

6

(2002). He further elaborated, "And determining which carbs count is simple: Check the total fiber grams listed on the food label and subtract that number from the total grams of carbohydrate listed." *Id.* at p. 69. Thus, even Dr. Atkins uses a different carbohydrate calculation than that used by Atkins in its labeling.

24.    Atkins does not disclose the conflict between Dr. Atkins' espoused method of calculating "net carbs" and the method used by the company.

**Sugar Alcohols Retain Significant Energy Value**

25.    Contrary to Atkins' claims, the authoritative scientific research on sugar alcohols, particularly maltitol, shows that they continue to have a significant impact on blood sugar levels.

26.    The Diabetes Teaching Center at the University of California, San Francisco puts it best, "[D]on't be fooled – sugar alcohols are still a form of carbohydrate, and they still affect your blood sugar levels, if not as dramatically."[2]

27.    Similarly, Dr. Regina Castro of the Mayo Clinic warns consumers should "be cautious with sugar alcohols" because they "can increase your blood sugar level."[3]

28.    To Plaintiffs' knowledge, no independent scientist, doctor, or researcher agrees with Atkins' assertion that maltitol and other sugar alcohols have a net energy value of zero. Atkins conceals this fact from consumers, and does not disclose this fact in its labeling or representations to consumers.

29.    In the study "Sugar Alcohols and Diabetes: A Review,"[4] Dr. Thomas Wolever explained:

---

[2]    See http://dtc.ucsf.edu/living-with-diabetes/diet-and-nutrition/understanding-carbohydrates/counting-carbohydrates/learning-to-read-labels/counting-sugar-alcohols/.

[3]    See http://www.mayoclinic.org/diseases-conditions/diabetes/expert-answers/artificial-sweeteners/faq-20058038.

Some people may believe that products sweetened with sugar alcohols allow for more variety in food choices, and, hence, increased quality of life for people with diabetes. However, there is *no evidence* that sugar alcohol-sweetened products have any benefit on long-term glycemic control in people with diabetes.

…

The rationale behind the use of sugar-alcohol sweetened products for weight management is that they reduce both the energy and sugar contents of confectionary. However, the reduction in energy content is not large[.] … Most sugar alcohols have an energy content 1.0 to 2.0 kcal/g less than sucrose or other carbohydrates, and since tolerance for sugar alcohol intake is limited, their impact on overall energy balance is likely to be, at most, approximately 20 to 40 kcal/day.

Thomas Wolever, M.D. Ph.D., "Sugar Alcohol and Diabetes: A Review," Canadian Journal of Diabetes 2002; 26(4): 356-362.

30.     Ordinary carbs have an energy value of approximately four calories per gram.

31.     Maltitol has an energy value of approximately three calories per gram, 25 percent less than the energy value of an ordinary carb.[5]

32.     Dr. Wolever found that 50 to 75 percent of maltitol is absorbed into the body.

33.     By multiplying the energy value by the percent of the sugar alcohol absorbed by the body, one can arrive at the carb value of a sugar alcohol relative to an ordinary carbohydrate. Thus, total carbohydrate energy consumed per gram of maltitol is actually between 38 to 56 percent of the carbohydrate value of table sugar or ordinary carbohydrates.

34.     Thus, according to this scientifically-accurate calculation, the true "net carbs" in Atkins "Chocolate Candies" product would be between 6.32 and 8.84 grams instead of the 1 gram fraudulently claimed by Atkins. Accordingly, just as one example, the "Chocolate

---

[4]     See http://archive.diabetes.ca/files/SugarAlcohols--Wolever--CJDDecember2002.pdf.

[5]     See http://www.inspection.gc.ca/food/labelling/food-labelling-for-industry/nutrition-labelling/elements-within-the-nutrition-facts-table/eng/1389206763218/1389206811747?chap=1.

Candies" product has a "net carb" value of between 632 to 884 percent times as high as that claimed by Atkins.

35.     According to the Diabetes Teaching Center at the University of California, San Francisco, "When counting carbohydrates for products made with sugar alcohols, [one should] subtract half of the grams of sugar alcohol listed on the food label from the total grams of carbohydrate."[6]

36.     Thus, experts agree: carbohydrates derived from sugar alcohols (1) impact blood sugar, and (2) should be included in the carbohydrate count for products. Atkins conceals this information from consumers.

<div align="center"><strong>The Term "Net Carbs" is Misleading</strong></div>

37.     The FDA has not regulated the phrase "net carb" but has affirmatively stated that it "ha[s] concerns that [the] term may be misleading to consumers."[7]

38.     The FDA admonished a different company for failing to include maltitol in its carbohydrate count on its label. In a June 20, 2001 letter concerning the product Carbolite, the FDA stated:

> The product is further misbranded because the label bears the claim "Zero Carbohydrate" and the statement "Maltitol . . . . has been omitted from the total carbohydrate content . . . ." Maltitol is a carbohydrate and must be included in the value declared for "Total Carbohydrate" . . .

*See* Food and Drug Administration Warning Letter ONPLDS 20-01 (June 20, 2001).

---

[6]     *See* http://www.diabetes.org/food-and-fitness/food/what-can-i-eat/understanding-carbohydrates/sugar-alcohols.html.

[7]     *See* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2014/ucm407036.htm.

39.     Though the FDA does not formally regulate use of the phrase "net carb," its Canadian counterpart has found that the phrase is "not acceptable due to lack of scientific consensus on … definition and [its] potential to mislead consumers."[8]

40.     In another study, Dr. Wolever articulated the same concerns. He wrote, "Food labels of products containing sugar alcohols can be confusing." Thomas Wolever, M.D. Ph.D., "Sugar Alcohol and Diabetes: A Review," Canadian Journal of Diabetes 2002; 26(4): 356-362 at 360 (2002). He elaborated that "individuals who use product labels to count carbohydrates could potentially overestimate the amount of insulin to use for a carbohydrate load. Complicating this issue is a lack of consistent labelling, both nationally and internationally, for products containing sugar alcohols." *Id.* at 361.

41.     In 2004, Atkins appeared to agree with the consensus that food labels concerning sugar alcohols were misleading. The company announced in 2004 that it would discontinue using the term "net carbs" on its food labels because the term is "imprecise." Sarah Ellison, *Atkins Labels Will Drop Term 'Net Carbs'*, THE WALL STREET JOURNAL, Oct. 6, 2004 (available at http://www.wsj.com/articles/SB109700319191636814). According to the article:

> As low-carb products have proliferated, the food industry has faced increasing skepticism about their nutrient content and labeling. For example, many companies, including Atkins at one time, calculate a products "net carbs" by subtracting grams of fiber and sugar alcohols from the total carbohydrate grams. That calculation allows food makers to cook up starchy, sweet products like brownies, pastries and candy, and call them "low carb." **But one thing the calculation doesn't take into account is that sugar alcohols raise blood-sugar levels, just as "net carbs" do.**

*Id.* (emphasis added).

---

[8]     *See* http://www.inspection.gc.ca/food/labelling/food-labelling-for-industry/nutrition-labelling/carbohydrate-claims/eng/1409844949900/1409845010355.

42.     Nonetheless, despite acknowledging that the term "net carbs" is "imprecise" – particularly when it subtracts sugar alcohols from its consideration – Atkins continues to use the term in its labeling and continues to use the formulation that it publicly rejected in 2004.

**Atkins' Conceals Material Facts and Its Representations Are False**

43.     Atkins' "net carb" claims are false, misleading, and likely to deceive consumers, such as Plaintiff and members of the Class, in that Atkins' products have multiple times the level of carbohydrates as labeled by Atkins' net carb claim because sugar alcohol continues to have an effect on blood sugar and calories in direct contradiction to Atkins' claims.

44.     Plaintiff purchased a box of Atkins Meal Advantage Chocolate Peanut Butter Bars. The front of the box advertised "Only 2g Net Carbs." The nutrition label on the back of the box identified the following calculation:

**Total Carb.: 23g**

Dietary Fiber: 9g

Sugars: 1g

Sugar Alcohols: 11g (Sugar Alcohols total includes 8g of glycerin. Rounded values.)

45.     Thus, the product Plaintiff purchased subtracted 11 grams of Sugar Alcohols from the Total Carbohydrate count, which contributed in part to the product's advertisement of "Only 2g Net Carbs."

46.     Due to this calculation and for the reasons set forth herein, the label on the box of Atkins Meal Advantage Chocolate Peanut Butter Bars was fraudulent and misleading. Furthermore, it omitted and concealed material facts concerning the carbohydrates in the peanut butter bars.

11

47.     Plaintiff also purchased a box of Atkins Day Break Peanut Butter Fudge Crisp Bar. Again, the front of the box advertised "Only 2g of Net Carbs." The nutrition label on the back of the box identified the following calculation:

**Total Carb.: 14g**

>    Dietary Fiber: 8g

>    Sugars: 1g

>    Sugar Alcohols: 5g (Sugar Alcohols total includes 5g of glycerin. Rounded values.)

48.     Thus, the product Plaintiff purchased subtracted at least a portion of the Sugar Alcohols from the Total Carbohydrate count, which contributed in part to the product's advertisement of "Only 2g Net Carbs."

49.     Due to this calculation and for the reasons set forth herein, the label on the box of Atkins Day Break Peanut Butter Fudge Crisp Bar was fraudulent and misleading. Furthermore, it omitted and concealed material facts concerning the carbohydrates in the peanut butter fudge crisp bars.

50.     The side of each box of the items described in paragraphs 44 and 47 also stated:

>    **Counting Carbs?**
>    The Net Carb Count helps you count carbs that impact blood sugar. Fiber and sugar alcohols, including glycerin, should be subtracted from the total carbs since they minimally impact blood sugar.

51.     The statement on the side of the box omits and conceals the true nature of sugar alcohols, i.e., that they do impact blood sugar and that they should be included in any carbohydrate calculation.

52.     Additionally, on or about June 18, 2014, at the Hy-Vee store located in Jefferson City in Cole County, Missouri, Plaintiff purchased other Atkins products containing sugar alcohols with a misleading "net carbs" calculation, including: Atkins Advantage 5 Pack of

12

Chocolate Chip Cookie Dough Bar; Atkins 5 Pack Caramel Nut Chew Bar; and Atkins Chocolate Candies (previously described in paragraph 19, *supra*). All of these products contain sugar alcohols (including maltitol), and the net carbs on each product wrongfully omit sugar alcohols from their calculation.

53.     Plaintiff would not have purchased the products if he had known that the Atkins' products identified herein instead had "net carbs" which were up to eight times higher than the amount claimed by Atkins.

54.     Furthermore, ordinary and reasonable consumers would not purchase Atkins' products containing the "net carbs" designation if they knew the facts and information that Atkins concealed from consumers.

55.     Plaintiff and members of the Class have been economically damaged by their purchase of Atkins' products because they have significantly more carbohydrates that affect the blood sugar and weight gain than the "net carb" amount claimed by Atkins. In this respect, Plaintiff and members of the Class have overpaid for Atkins products containing the "net carbs" calculation that omits sugar alcohols from its calculation.

56.     At a minimum, Plaintiff contends that Defendant should cease labeling its products with a "net carb" calculation that assigns a value of zero to sugar alcohols.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff re-alleges and incorporates by reference the allegations set forth above.

58.     Pursuant to Missouri Supreme Court Rule 52.08, Plaintiff brings this class action and seeks certification of the claims on behalf of the following class:

> Citizens of Missouri who have purchased Atkins' products labeled and marketed with the "net carbs" calculation that contained sugar alcohols in the State of Missouri within the five-year period immediately preceding the filing date of this action.

13

59.     Plaintiff reserves the right to amend the Class definition if further investigation and

discovery indicates that the Class definition should be narrowed, expanded, or otherwise

modified.

Excluded from the Class are governmental entities, Defendant, any entity in which Defendant

has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives,

employees, co-conspirators, successors, subsidiaries, and assigns.

60.     This action has been brought and may be maintained as a class action under

Missouri Supreme Court Rule 52.08.

61.     **Numerosity – Mo. R. Civ. P. 52.08(a)(1).**  Class members are so numerous that

their individual joinder is impracticable. The precise number of Class members and their

identities are unknown to Plaintiff at this time but will be determined through discovery. Class

members may be notified of the pendency of this action by mail or by published notice or other

appropriate methods.

62.     **Existence and Predominance of Common Questions of Law and Fact – Mo.
R. Civ. P. 52.08(a)(2); 52.08(b)(3).**  Common questions of law and fact exist as to all members

of the Class and predominate over questions affecting only individual Class members.  These

common legal and factual questions, each of which may also be certified under Rule 52.08(c)(4),

include the following:

a.  Whether Defendant's practices and representations related to the marketing, labeling,
    and sales of the products were unfair, deceptive, and/or unlawful in any respect,
    thereby violating Missouri's Merchandising Practices Act;

14

b.  Whether Defendant's practices and representations to the marketing, labeling, and sales of the Product constituted a breach of express warranty in violation of Missouri law;

c.  Whether Defendant's practices and representations to the marketing, labeling, and sales of the Product constituted a breach of the implied warranty of merchantability in violation of Missouri law;

d.  Whether Defendant's conduct constituted unjust enrichment in violation of Missouri law;

e.  Whether Defendant's conduct as set forth above injured consumers and, if so, the extent of the injury;

f.  Whether this case may be maintained as a class action under Mo. R. Civ. P. 52.08;

g.  Whether and to what extent Class members are entitled to damages and other monetary relief;

h.  Whether and to what extent Class members are entitled to equitable relief, including declaratory relief, restitution, rescission, a preliminary and/or a permanent injunction; and

i.  Whether and to what extent Class members are entitled to attorneys' fees and costs.

63.  **Typicality – Mo. R. Civ. P. 52.08(a)(3).**  Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased the Product at issue in the litigation. Plaintiff's claims are typical of the claims of the members of the Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

15

64. **Adequacy of Representation – Mo. R. Civ. P. 52.08(a)(4).** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

65. **Superiority – Mo. R. Civ. P. 52.08(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

66. Additionally, the Class may be certified under Rule 52.08(b)(1) and/or (b)(2) because:

    a. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Atkins;

16

b.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.     Atkins has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class members as a whole.

## COUNT I
### VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
### Mo. Rev. Stat. §§ 407.010 *et seq.*

67.     Plaintiff re-alleges and incorporates by reference the allegations set forth above. Plaintiff asserts this cause of action on behalf of the Class against Defendant.

68.     The Missouri Merchandising Practices Act ("the Act") provides that "[t]he act, use or employment by any person of any deception . . . [or] unfair practice, or the concealment . . . of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice." Mo. Rev. Stat. § 407.020.1.

69.     The enabling regulations for the Act define an "unfair practice" as conduct that (1) offends public policy; (2) is unethical, oppressive, and unscrupulous; (3) causes a risk of substantial injury to consumers; (4) was not in good faith; (5) is unconscionable; or (6) is unlawful. *See* Mo. Code Regs. Ann. tit. 15, § 60-8.

70.     Under the Act, the term "merchandise" is broadly defined to include "any objects . . . or services." Mo. Rev. Stat. § 407.020.4.

71.     The Act authorizes private causes of action, and class actions.  Mo. Rev. Stat. §§ 407.025.1; 407.025.2.

72.     Plaintiff purchased Atkins' products labeled and marketed with the "net carbs" calculation for personal use within the meaning of the Act.

73.     Atkins practice of misrepresenting and misstating the "net carbs" calculation in its products is an unfair practice within the meaning of the Act.

74.     Furthermore, Atkins' practice of omitting and concealing material facts concerning its "net carbs" calculation is an unfair practice within the meaning of the Act.

75.     As a result of Defendant violating the Act, Plaintiff and others sustained an ascertainable loss of money when they overpaid for Atkins' products labeled and marketed with the "net carbs" calculation.

76.     Defendant's violations of the Act were willful and knowing.

77.     Plaintiff and Class members seek actual damages; a declaration that Atkins' methods, acts and practices violate the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq.*; an injunction prohibiting Atkins from continuing to engage in such unlawful methods, acts, and practices; restitution; rescission; disgorgement of all profits obtained from Atkins' unlawful conduct; pre and post-judgment interest; and attorneys' fees and costs.

## COUNT II
### BREACH OF EXPRESS WARRANTY
### Mo. Rev. Stat. § 400-2-313.1(a)

78.     Plaintiff re-alleges and incorporates by reference the allegations set forth above. Plaintiff asserts this cause of action on behalf of the Class against Defendant.

79.     Plaintiff formed a contract with Atkins at the time Plaintiff purchased products labeled and marketed with the "net carbs" calculation. The terms of that contract include the

18

promises and affirmations of fact that Atkins makes on its products packaging and through marketing and advertising. Atkins' marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Atkins, on the one hand, and Plaintiff and the Class, on the other hand.

80.     In addition or in the alternative to the formation of an express contract, Atkins made each of its above-described representations to induce Plaintiff and other members of the Class to rely on such representations, and they each did so rely (should be presumed to have relied) on Atkins' representations as a material factor in their decisions to purchase Atkins' products labeled and marketed with the "net carbs" calculation.

81.     At all times relevant to this action, Atkins has breached its express warranties about products labeled and marketed with the "net carbs" calculation because those products wrongfully discount the carbs associated with sugar alcohols and contain carbohydrates that are omitted and/or misrepresented in Atkins' packaging and advertising.

82.     Atkins' conduct is in violation of Missouri's express warranty law, codified at Mo. Rev. Stat. § 400-2-313.1(a).

83.     Section 400-2-313.1(a) does not require privity of contract to recover for breach of express warranty.

84.     Plaintiff and members of the Class were injured as a direct and proximate result of Atkins' breach because (a) they paid a prime premium due to the misrepresentations and omissions of material fact on Atkins' packaging and in Atkins' marketing and advertising of products labeled and marketed with the "net carbs" calculation, and (b) Atkins' products labeled and marketed with the "net carbs" calculation did not have the composition, attributes, characteristics, or value promised.

Electronically Filed - Cole Circuit - June 15, 2016 - 02:59 PM

## COUNT III
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Mo. Rev. Stat. § 400-2.314

85.     Plaintiff re-alleges and incorporates by reference the allegations set forth above. Plaintiff asserts this cause of action on behalf of the Class against Defendant.

86.     Plaintiff and members of the Class purchased Atkins' products labeled and marketed with the "net carbs" calculation for the ordinary purpose of consumption.

87.     By representing that its products labeled and marketed with the "net carbs" calculation Atkins impliedly warranted that its products labeled and marketed with the "net carbs" calculation was of a merchantable quality, such that they were of the same grade, quality and value as similar goods sold under similar circumstances.

88.     Plaintiff and members of the Class relied on Atkins' representations when they purchased the Atkins' products labeled and marketed with the "net carbs" calculation.

89.     Atkins breached the warranty implied at the time of sale in that Plaintiff and members of the Class did not receive goods that were as represented, and thus the goods were not merchantable as fit for their ordinary purposes for which the goods are used or promoted, marketed, advertised, packaged, labeled, or sold.

90.     Atkins' conduct violates Mo. Rev. Stat. § 400-2.314.

91.     Section 400-2.314 does not require privity of contract to recover for breach of implied warranty.

92.     As a result of Atkins' breach of implied warranties, Plaintiff and members of the Class have been damaged in the amount of the price premium that they paid for Atkins' products labeled and marketed with the "net carbs" calculation.

## COUNT IV
### UNJUST ENRICHMENT / MONEY HAD AND RECEIVED

93.     Plaintiff re-alleges and incorporates by reference the allegations set forth above. Plaintiff asserts this cause of action on behalf of the Class against Defendant.

94.     As a direct and proximate result of Atkins' conduct regarding the marketing and sale of its products labeled and marketed with the "net carbs" calculation, Plaintiff and members of the Class paid a price premium for the products.

95.     By virtue of paying the price premium, Plaintiff and the Class conferred upon Defendant a benefit to the detriment of Plaintiff and the Class.

96.     Atkins realized and appreciated the benefit it received from the unauthorized price premium that it charged to Plaintiff and the Class.

97.     Atkins has been unjustly enriched in violation of Missouri law in retaining the revenues derived from the price premium paid by Plaintiff and the Class.

98.     Atkins' retention of these unjust payments would be inequitable, and Atkins owes restitution to Plaintiff and the Class on account of its unjust enrichment.

99.     Plaintiff and the Class seek judgment in their favor and against Defendant in such amount as is fair and reasonable, for injunctive relief enjoining Defendant from continuing to overcharge Missouri consumers for Atkins' products labeled and marketed with the "net carbs" calculation, an award of reasonable attorneys' fees, and costs and expenses.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

DATED: June 15, 2016                    Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

_____/s/ Matthew L. Dameron_____
Matthew L. Dameron, MO Bar No. 52093
1100 Main Street, Suite 2600
Kansas City, Missouri 64105

21

Telephone:     (816) 876-2600
Facsimile:     (816) 221-8763
matt@williamsdirks.com


**BARNES & ASSOCIATES**

_____/s/ Jay Barnes_____
Jason "Jay" Barnes, Mo. Bar #57583
219 E. Dunklin Street, Suite A
Jefferson City, MO 65101
Telephone:     (573) 634-8884
Fax:             (573) 635-6291
jaybarnes5@zoho.com

*Counsel for Plaintiff and the Proposed Class*

Electronically Filed - Cole Circuit - June 15, 2016 - 02:59 PM

**IN THE CIRCUIT COURT OF COLE COUNTY, MISSOURI**

| | | |
|---|---|---|
| PLAINTIFF MICHAEL JOHNSON, | ) | |
| as an individual, and on behalf | ) | |
| of all others similarly situated, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| ATKINS NUTRITIONALS, INC., | ) | |
|     Defendant | ) | |

## MOTION FOR APPOINTMENT OF
## SPECIAL PROCESS SERVER

    COMES NOW, Plaintiff, by and through undersigned counsel, and moves that Melissa Brookstone of Denver Process Servers, LLC of Denver Colorado who is not a party and is not less than 18 years of age, be appointed as special process server in the above cause to serve the summons and complaint in this case.

                    Respectfully submitted,
                    **WILLIAMS DIRKS DAMERON LLC**

                    /s/ Matthew L. Dameron
                    Matthew L. Dameron, MO Bar No. 52093
                    1100 Main Street, Suite 2600
                    Kansas City, Missouri 64105
                    Telephone:    (816) 876-2600
                    Facsimile:    (816) 221-8763
                    matt@williamsdirks.com

                    **BARNES & ASSOCIATES**

                    /s/ Jay Barnes
                    Jason "Jay" Barnes, Mo. Bar #57583
                    219 E. Dunklin Street, Suite A
                    Jefferson City, MO 65101
                    Telephone:   (573) 634-8884
                    Fax:         (573) 635-6291
                    jaybarnes5@zoho.com

                    ***Counsel for Plaintiff and the Proposed Class***

Electronically Filed - Cole Circuit - June 15, 2016 - 02:59 PM

## IN THE CIRCUIT COURT OF COLE COUNTY, MISSOURI

| | | |
|---|---|---|
| PLAINTIFF MICHAEL JOHNSON,<br>as an individual, and on behalf<br>of all others similarly situated,<br>    Plaintiff<br><br>    v.<br><br>ATKINS NUTRITIONALS, INC.,<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____ |

## ORDER

Upon application by Petitioner, it is hereby

ORDERED that Melissa Brookstone of Denver Process Servers, LLC of Denver, Colorado is hereby appointed to serve as a special process server for the purpose of serving the summons and complaint in this case.

_____
by bmu

_____

**Friday, June 17, 2016**
DATED



# IN THE 19TH JUDICIAL CIRCUIT COURT, COLE COUNTY, MISSOURI

| Judge or Division:<br>PATRICIA S JOYCE | Case Number: 16AC-CC00255 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL JOHNSON | Plaintiff's/Petitioner's Attorney/Address<br>JASON OWEN BARNES<br>BARNES & ASSOCIATES<br>219 E DUNKLIN STREET, SUITE A<br>JEFFERSON CITY, MO 65101 |
| vs. | |
| Defendant/Respondent:<br> ATKINS NUTRITIONALS, INC. | Court Address:<br>301 E HIGH |
| Nature of Suit:<br>CC Other Tort | JEFFERSON CITY, MO 65101<br><br>(Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  **ATKINS NUTRITIONALS, INC.**
                            **Alias:**

**1050 17TH STREET**
**SUITE 1000**
**DENVER, CO 80265-1001**

*COURT SEAL OF*



*COLE COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

_____**Friday, June 17, 2016**_____     _____
                Date                                                             by bmu

Further Information:

### Sheriff's or Server's Return

Note to serving officer:  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
_____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____(title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____                    _____
   Printed Name of Sheriff or Server                                    Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____     _____
                                                 Date                                        Notary Public

| Sheriff's Fees | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $_____10.00_____ | |
| Mileage | $_____ | (_____ miles @ $._____ per mile) |
| **Total** | $_____ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

Case 2:16-cv-04213-MDH   Document 1   Filed 07/22/16   Page 37 of 39



Electronically Filed - Cole Circuit - July 11, 2016 - 03:25 PM

# IN THE 19TH JUDICIAL CIRCUIT COURT, COLE COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division: PATRICIA S JOYCE | Case Number: 16AC-CC00256 |
| Plaintiff/Petitioner: JULIET JOHNSON | Plaintiff's/Petitioner's Attorney/Address: JASON OWEN BARNES, BARNES & ASSOCIATES, 219 E DUNKLIN STREET, SUITE A, JEFFERSON CITY, MO 65101 |
| vs. | |
| Defendant/Respondent: ATKINS NUTRITIONALS, INC | Court Address: 301 E HIGH, JEFFERSON CITY, MO 65101 |
| Nature of Suit: CC Other Tort | |

## Summons in Civil Case

The State of Missouri to: ATKINS NUTRITIONALS, INC

1560 BROADWAY
SUITE 1800
DENVER, CO 80202

COURT SEAL OF COLE COUNTY

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

Friday, June 17, 2016
Date Clerk

Further Information:

My Commission Expires 11/27/2018
Commission No. 2009...
Notary Public

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with ______ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to ______ (name) ______ (title).

☐ other ______

Served at ______ (address)

Printed Name of Sheriff or Server ______ Signature of Sheriff or Server ______

Must be sworn before a notary public if not served by an authorized officer:

(Seal) Subscribed and sworn to before me on ______ (date).

My commission expires: ______ Date ______ Notary Public

Sheriff's Fees
Summons $______
Non Est $______
Sheriff's Deputy Salary
Supplemental Surcharge $ 10.00
Mileage $______ (______ miles @ $.______ per mile)
Total $______

A copy of the summons and a copy of the petition must be served on each Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# IN THE 19TH JUDICIAL CIRCUIT COURT, COLE COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>PATRICIA S JOYCE | Case Number: 16AC-CC00255 |
| Plaintiff/Petitioner:<br>MICHAEL JOHNSON | Plaintiff's/Petitioner's Attorney/Address<br>JASON OWEN BARNES<br>BARNES & ASSOCIATES<br>219 E DUNKLIN STREET, SUITE A<br>JEFFERSON CITY, MO 65101 |
| vs. | |
| Defendant/Respondent:<br>ATKINS NUTRITIONALS, INC.<br>Nature of Suit:<br>CC Other Tort | Court Address:<br>301 E HIGH<br>JEFFERSON CITY, MO 65101<br><br>(Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: **ATKINS NUTRITIONALS, INC.**
**Alias:**

1050 17TH STREET
SUITE 1000
DENVER, CO 80265-1001

*Jennifer S. Brookstone*
*State of Colorado*
*Notary Public*
*Commission No. 20064048066*
*My Commission Expires 11/27/2018*

**COURT SEAL OF**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

| Friday, June 17, 2016 | |
|---|---|
| Date | _by trmz_ |

**COLE COUNTY**

Further Information:

---

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

__TAYLOR PHILLIPS__ (name) __RECEPTIONIST__ (title).

☐ other _____.

Served at __1050 17TH ST., 1000, DENVER, CO 80202__ (address)

in __DENVER/DENVER__ (County/City of St. Louis) MO, on __6-23-16__ (date) at __2:09 PM__ (time).

__Melissa Brookstone__                                        __Melissa Brookstone__
Printed Name of Sheriff or Server                         Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on __7-1-16__ (date).

My commission expires: __11-27-18__                     __Jennifer S Brookstone__
                                Date                              Notary Public

---

| Sheriff's Fees | | |
|---|---|---|
| Summons | $ | |
| Non Est | $ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ 10.00 | |
| Mileage | $ | (_____ miles @ $._____ per mile) |
| Total | $ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

---