IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MICHAEL JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:16-cv-04213-MDH |
| | ) | |
| ATKINS NUTRITIONALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 90).

## LEGAL STANDARD

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do so, the moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

1

**BACKGROUND**

This matter arises from Plaintiff's purchase of five Atkins-brand products that he alleges bore false statements on their labels concerning "Net Carbs," or net carbohydrates: Atkins Meal Advantage Chocolate Peanut Butter Bars, Atkins Day Break Peanut Butter Fudge Crisp Bar, Atkins Advantage 5 Pack of Chocolate Chip Cookie Dough Bar, Atkins 5 Pack Caramel Nut Chew Bar, and Atkins Endulge Chocolate Candies. Defendant calculates the net carbohydrate content of its products by subtracting the product's dietary fiber and sugar alcohol content from its total carbohydrates. For example, a product may have 19g of total carbohydrates, 4g of dietary fiber, and 14g of sugar alcohols. Using Defendant's calculation method, this product has 1g of net carbohydrates.

The Court previously held that some of Plaintiff's theories of liability were preempted by federal law. (Doc. 57). The Court held that Plaintiff could proceed on their theory that labels stating a product contained "Only Xg Net Carbs" were false, misleading, or deceptive because such labels may run afoul of 21 U.S.C. § 343(r). The Court also permitted Plaintiff's claims based on the theory that the "Counting Carbs?" labels made false, misleading, or deceptive statements concerning the effects of sugar alcohols on blood sugar. The Court held that a theory of liability based on the calculation method itself was preempted because such a claim sought to impose labeling requirements that are not identical to those imposed by federal law. However, Plaintiff would be permitted to introduce evidence concerning the calculation method insofar as it was connected to the assertion that sugar alcohols have energy content and impact blood sugar. Finally, the Court held that claims based on labels stating the products contained "Xg Net Carbs" were preempted because such statements constituted permissible nutrient content claims under federal law. But, the Court also stated that evidence concerning those labels would be admissible

because they may be contextually linked to the "Counting Carbs?" labels. As to Plaintiff's claims, the Court dismissed Count III of Plaintiff's Complaint which alleged breach of implied warranty for failure to state a claim.

During his deposition, Plaintiff was questioned regarding the labels at issue in this matter and his motivations for purchasing the products:

- Plaintiff testified that he remembered "seeing" but not "reading" the "Counting Carbs?" label prior to purchasing the Chocolate Peanut Butter Bar product, and that he did not "look at" the "Counting Carbs?" label on the Peanut Butter Fudge Crisp Bar product when he purchased it.
- Plaintiff testified, "I don't really think it does anything. I mean, you're still displaying right here '2 grams carbs,' " when asked whether he felt the presence of the word "only" impacted the meaning of a label stating, "Only 2g Net Carbs"
- When asked about his purchasing decision concerning the Chocolate Peanut Butter Bar, and whether the "Counting Carbs?" label was important to that decision, Plaintiff testified that his then-wife would direct him to purchase certain things that they wanted.
- Plaintiff also testified, however, that the products were purchased as part of a no-to-low carb diet plan to cut sugar and lose weight, and he further testified that his then-wife assisted in determining what he ate.

## DISCUSSION

After the Court's ruling on Defendant's Motion to Dismiss, three of Plaintiff's claims remain at issue: Count I alleges violation of the Missouri Merchandising Practices Act (MMPA), Count II alleges breach of express warranty, and Count IV alleges unjust enrichment.

3

The sole basis of Defendant's assertion that it is entitled to summary judgment is that Plaintiff did not see certain labels, did not rely on their contents, or purchased the products for reasons other than what was stated in the labels.

### I. Missouri Merchandising Practices Act

The MMPA declares that it is an "unlawful practice" to use or employ "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce. . . ." Mo. Rev. Stat. § 407.020. To prevail on a claim for a violation of the MMPA, a plaintiff must "prove that they made a purchase or lease for personal, family, or household purposes and suffered an ascertainable loss of money or property as a result of an act declared unlawful under section 407.020." *Binkley v. Am. Equity Mortg., Inc.*, 447 S.W.3d 194, 198 (Mo. 2014) (en banc); Mo. Rev. Stat. § 407.025.

#### A. Materiality/Reliance

Defendant first contends that, in order to prevail, Plaintiff must have either relied on the labels, or the content of the labels must have been material to his purchasing decision. Defendant asserts that the evidence shows Plaintiff did not so rely, and the content of the labels were not material to his decision to purchase the products. Missouri law contradicts Defendant's position.

"The purpose of Missouri's Merchandising Practices Act is 'to preserve fundamental honesty, fair play and right dealings in public transactions.'" *State ex rel. Nixon v. Beer Nuts, Ltd.*, 29 F.3d 828, 837 (Mo. Ct. App. 2000) (quoting *State ex rel. Danforth v. Independent Dodge, Inc.*, 494 S.W.2d 362, 368 (Mo. Ct. App. 1973). "[T]he MMPA serves as a supplement to the definition of common law fraud; it eliminates the need to prove an intent to defraud or reliance." *Schuchmann v. Air Serv's Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 232

4

(Mo. Ct. App. 2006). Nothing in Sections 407.020 or 407.025 indicate that a consumer must rely on the allegedly unlawful practice to pursue a claim.

The Missouri Attorney General's Office has promulgated regulations defining each type of unlawful practice outlined by Section 407.020. Plaintiff's Complaint alleges three kinds of unlawful practices: deception, unfair practices, and concealment.

Deception is defined as "any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." 15 C.S.R. § 60-9.020(1). Furthermore, "Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable mental state such as recklessness or negligence, are not elements of deception as used in Section 407.020.1" *Id.* at § 60-9.020(2).

An unfair practice is defined as:

[A]ny practice which—
    (A) Either—
        1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or
        2. Is unethical, oppressive or unscrupulous; and
    (B) Presents a risk of, or causes, substantial injury to consumers.

15 C.S.R. § 60-8.020(1). Additionally, "Proof of deception, fraud, or misrepresentation is not required to prove unfair practices as used in section 407.020.1." *Id.* at § 60-8.020(2).

Concealment is defined as "any method, act, use or practice which operates to hide or keep material facts from consumers." *15 C.S.R. § 60-9.110*. However, concealment is different from both deception and unfair practices in one distinct manner: Concealment only applies to material facts. *Id.* But, like the other unlawful practices, reliance *is not* an element of a concealment claim. *Id.* A consumer need not show that he relied upon the concealment of the

material fact in making his purchasing decision, only that the fact so-concealed would have been material to his decision if he had known it.

If these definitions seem broad, that is because they are. The Missouri Supreme Court, in discussing what constitutes an "unfair practice" within the meaning of the MMPA, described the words of Section 407.020 as "unrestricted, all-encompassing, and exceedingly broad. For better or worse, the literal words cover every practice imaginable and every unfairness to whatever degree." *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2001) (en banc). "The statute and the regulation[s] paint in broad strokes to prevent evasion thereof due to overly meticulous definitions." *Schuchmann*, 199 S.W.3d at 233. The MMPA is a consumer-friendly law that is specifically designed to enable consumers to obtain relief even in those circumstances where they cannot prove fraud. Only when the consumer alleges concealment as an unlawful practice do they have to demonstrate that the fact so-concealed would have been material to their purchasing decision. Thus, unless Plaintiff intends to proceed on his theory of concealment, materiality is not an element of his MMPA claim. The Court concludes, based on the limited facts available to it, that there is a genuine dispute of material fact as to whether the "Only Xg Net Carbs" label and the claim made in the "Counting Carbs?" label concealed facts that would have been material to Plaintiff's purchasing decision had he known them.

### B. Ascertainable Loss

Defendant contends that the evidence shows Plaintiff did not suffer an "ascertainable loss" under the MMPA. The essence of Defendant's argument is that Plaintiff completely used, and obtained the benefit of, the products he purchased. That is to say, he consumed the products and was not adversely affected by consuming them. This is not the rule under the benefit of the bargain theory of damages.

6

To support this contention, Defendant relies on a number of cases whose holdings are ultimately inapplicable to the scenario at hand. For example, in *Owen v. General Motors Corp.*, 533 F.3d 913 (8th Cir. 2008), the purchasers sued a car manufacturer under the MMPA for failing to disclose defects in a windshield wiper assembly. The wiper assembly had been used in other models of vehicles and the manufacturer was aware that the assembly sometimes failed due to a particular defect. However, the purchasers in *Owen* could not prove that the wiper assembly at issue in their case failed because of the known defect. There were a number of plausible causes for the assembly's failure, and the purchasers had no evidence that the defect known to the manufacturer was the cause. The Eighth Circuit noted that "evidence of the precise nature of the defect is paramount because only the defect which [the manufacturer] failed to disclose can give rise to an MMPA claim." *Id.* at 922-23. So, when *Owen* discusses the need for a "causal connection" it meant that the defect which caused the wiper assembly to fail and the defect which the manufacturer failed to disclose must be the same. Here, there is no similar issue.

Missouri courts do not approach the benefit of the bargain concept narrowly. Regarding ascertainable loss, "A plaintiff adequately pleads this element of an MMPA claim if he alleges an ascertainable loss under the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction." *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, at 313 (Mo. Ct. App. 2016). This rule is provided by Missouri's standard instruction for damages in misrepresentation cases. *Id.* (citing Missouri Approved Instruction 4.03). There is no requirement of reliance in pleading or proving ascertainable loss; all that is required is that the consumer prove the product was worth less than what the consumer paid for it. Whether the consumer completely used the product is of no consequence; indeed, such a rule would eradicate the ability of consumers to pursue many

7

MMPA claims related to consumable products. At trial, Plaintiff must prove that the product was, in fact, worth less than what he paid for it. On that issue, the Court finds that there is a factual question that precludes summary judgment.

## II. Breach of Express Warranty and Unjust Enrichment

The Court will address the law as to each claim individually and then combine the issues for the purpose of determining whether summary judgment is appropriate.

*a. Breach of Express Warranty*

To prevail on breach of express warranty, a plaintiff is required to show that a seller: (1) sold goods to the plaintiff; (2) made a statement of fact about the kind or quality of those goods; (3) the statement was a material factor that induced the plaintiff's purchase; (4) the goods did not conform to that statement of fact; (5) the nonconformity injured the buyer, and; (6) the buyer notified the seller of the nonconformity of the goods in a timely manner. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. 2010) (en banc).

The only element at issue in this motion is the third. The representation must have been material to the consumer's purchasing decision and it must have induced the purchasing decision. Missouri courts have not expressly interpreted this to require "reliance" in the strict meaning of that word. The consumer must, however, be able to demonstrate that he was at least *aware* of the representation, such that he could have relied upon it in making a decision. *Hope v. Nissan N.A., Inc.*, 353 S.W.3d 68, 86 (Mo. Ct. App. 2011) ("Missouri law is clear that while a brochure, catalog, or advertisement may constitute part of an express warranty, that catalog, advertisement, or brochure must have *at least* been read by the party claiming the express warranty.") (emphasis in original) (citing *Interco, Inc. v. Randustrial Corp.*, 533 S.W.2d 257, 262 (Mo. Ct. App. 1976).

8

*b. Unjust Enrichment*

"To establish the elements of an unjust enrichment claim, a plaintiff must show, (1) it conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under circumstances that are inequitable or unjust." *AIG Agency, Inc. v. Mo. Gen. Ins. Agency, Inc.*, 474 S.W.3d 222, 228 (Mo. Ct. App. 2015). "Unjust retention of benefits only occurs when the benefits were 'conferred (a) in misreliance on a right or duty; or (b) through dutiful intervention in another's affairs; or (c) under constraint.'" *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010) (quoting *Graves v. Berkowitz*, 15 S.W.3d 59, 62 (Mo. Ct. App. 2000)). Here, "misreliance" refers to a mistake of fact. *Id.* at 436 n.4.

Again, the only element at issue relates to the question of reliance. Here, the law is more clear; the consumer must have actually relied upon the alleged misrepresentation in making the purchase. Plaintiff does not dispute that requirement, and reiterates in his briefing that his allegations are founded on the theory that he was actually induced to purchase the products based on the content of the alleged misrepresentations.

*c. Analysis*

There are five products[1] and two different labels that give rise to the claims in this case.

1. "Counting Carbs?" Label

During Plaintiff's deposition, he testified that he did not read, look at, or otherwise see the "Counting Carbs?" label on packaging for the Peanut Butter Fudge Crisp Bar. In addition,

---

[1] Atkins Meal Advantage Chocolate Peanut Butter Bars, Atkins Day Break Peanut Butter Fudge Crisp Bar, Atkins Advantage 5 Pack of Chocolate Chip Cookie Dough Bar, Atkins 5 Pack Caramel Nut Chew Bar, and Atkins Endulge Chocolate Candies.

when questioned about the same label on the package for the Chocolate Peanut Butter Bars, Plaintiff testified that he recalled "seeing it" but explicitly said that he did not recall "reading it."[2] There is no evidence before the Court that Defense counsel questioned Plaintiff regarding the "Counting Carbs?" label and the remaining three products.

Defendant claims it is entitled to summary judgment as to all five products. Defendant argues summary judgment is appropriate on two products because Plaintiff's deposition testimony demonstrated that Plaintiff did not rely on the "Counting Carbs?" label in making his purchase decision. Defendant says it is entitled to summary judgment on the remaining three products because Plaintiff's own Complaint failed to allege an entitlement to relief based on the "Counting Carbs?" label in connection with the purchase of those products.

As to the Peanut Butter Fudge Crisp Bar, the Court will grant summary judgment on Plaintiff's claims for breach of express warranty and unjust enrichment premised on the "Counting Carbs?" label. Plaintiff admitted during his deposition and in his briefing that he did not look at or otherwise see the label when deciding to purchase the product.

Regarding the Chocolate Peanut Butter Bars, Plaintiff testified that he recalled "seeing" but not "reading" the "Counting Carbs?" label. Missouri courts have said that "reading" a representation is the bare minimum that a Plaintiff must do to pursue a claim for breach of express warranty, and Plaintiff has admitted that reliance is necessary for unjust enrichment. Plaintiff's own decision to distinguish "seeing" from "reading" in his testimony leads to the natural conclusion that he was generally aware of the label but not relying on its contents to make a purchasing decision.

---

[2]Plaintiff's exact response was, "Seeing it, yes. Reading it, no, not really."

The Court will not split hairs in this matter by granting summary judgment on the unjust enrichment claim and not the breach of express warranty claim. The Court will follow the elements of the breach of express warranty claim as written by the Missouri Supreme Court — which require a representation to be both material and induce the purchase. As such, taking Plaintiff's testimony at face value, he did not rely on the label to make his purchasing decision, nor was he induced to purchase the product based on the label. As such, the Court will grant summary judgment on Plaintiff's claims for breach of express warrant and unjust enrichment as they pertain to the "Counting Carbs?" label on the Chocolate Peanut Butter Bars.

As to the remaining the products, the Court will not grant summary judgment to Defendant. Defendant was well-aware that five products, and their labels, were at issue in this matter. The Federal Rules of Civil Procedure are quite lenient on the issue of pleading claims. Their basic purpose "is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *N. States Power Co. v. Federal Transit Admin.*, 358 F.3d 1050, 1056-57 (8th Cir. 2004) (citation omitted). Based on Plaintiff's Complaint, Defendant knew that five of its products were at issue and that Plaintiff's claims were based on the front-facing net carbohydrate representations and the "Counting Carbs?" labels. The fact that Plaintiff did not explicitly connect three products to the "Counting Carbs?" label does not put Defendant at an unfair disadvantage. These claims have not magically appeared at the last moment to defeat summary judgment. *See, e.g., id.* Any rational reader of Plaintiff's Complaint would have recognized that the "Counting Carbs?" label was at issue in relation to "at least two of the products," if not more.[3]

---

[3] In this Court's own Order on Defendant's Motion to Dismiss, the Court described the factual background based on Plaintiff's Complaint. It stated: "Furthermore, at least two of the products

If Defendant failed to inquire about Plaintiff's knowledge of the "Counting Carbs?" label on the remaining three products during Plaintiff's deposition, it cannot be excused by any lack of reasonable notice. If Defendant pursued this line of questioning regarding the remaining three products, and received responses that admitted a lack of reliance or inducement, it failed to provide that testimony in support of its motion for summary judgment. The absence of evidence demonstrating Plaintiff's lack of reliance on the "Counting Carbs?" label on the remaining three products precludes summary judgment. While Plaintiff ultimately will have the burden of proof on the issue of reliance, summary judgment cannot be entered for Defendant on the information before the Court thus far.

Additionally, to the extent that Plaintiff indicated that his purchasing decisions were related to his then-wife's directions, it is unclear whether this question was limited to Plaintiff's decision to purchase the Chocolate Peanut Butter Bars, and the "Counting Carbs?" label on that product. The Court will not extrapolate at the summary judgment stage that the same motivations led to the purchase of the remaining products. Whether such a conclusion should be reached based on that statement is for a fact-finder to determine. Furthermore, it is not clear what led Plaintiff's then-wife to direct him to purchase any particular product. Plaintiff testified that his wife assisted him in his pursuit of a low-carb diet by helping determine what he should eat. The parties do not address whether Plaintiff could pursue his claims based on his then-wife's reliance on the products' labels in providing that assistance. Neither do the parties provide any information regarding what, if any, knowledge, familiarity, or experience she had regarding the

---

bear side or rear labels stating the following: "Counting Carbs? The Net Carb Count helps you count carbs that impact your blood sugar. Fiber and sugar alcohols, including glycerin, should be subtracted from the total carbs since they minimally impact blood sugar." (Doc. 57, pg. 2).

labels in question and whether the labels played any role in the advice, directions, instructions or suggestions given Plaintiff.

## 2. "Only Xg Net Carbs" Label

During Plaintiff's deposition, he was questioned about a label stating that a product had "Only 2g Net Carbs." Defendant's counsel asked Plaintiff if he viewed a label stating "2 grams net carbs" as being different from a label stating "only 2 grams net carbs." Plaintiff responded: "I don't think it really does anything. I mean, you're still displaying right here '2 grams carbs.' "

Defendant argues it is entitled to summary judgment because this response demonstrates that Plaintiff did not rely on the word "only" in the "Only Xg Net Carbs" labels when making his purchasing decision. The Court is not inclined to grant summary judgment on this basis. While the presence of the word "only" strips this label of its NLEA preemption protection (See Doc. 57, pgs. 13-14), the Court does not believe that Plaintiff's explicit reliance on the word "only" is necessary to pursue his claims for breach of express warranty and unjust enrichment. Instead, the label is merely vulnerable to the types of claims that would normally be preempted. There is at least a question of fact as to whether Plaintiff relied on the label as a whole in making his purchasing decision due to his own observation of the label, his then wife's possible assistance and direction in purchasing products, and his diet-related goals. The Court also concludes that there is a question of fact as to whether the "Only Xg Net Carbs" labels were misrepresentations of fact or otherwise misleading. This is sufficient to defeat summary judgment.

## IV. Conclusion

The Court **DENIES** Defendant's Motion for Summary Judgment as to Count I regarding all products and both the "Counting Carbs?" and "Only Xg Net Carbs" labels.

13

The Court **GRANTS** Defendant's Motion for Summary Judgment as to Counts II and IV regarding the "Counting Carbs?" label on the Peanut Butter Fudge Crisp Bar and the Chocolate Peanut Butter Bars.

The Court **DENIES** Defendant's Motion for Summary Judgment as to Counts II and IV regarding the "Counting Carbs?" label on the Chocolate Chip Cookie Dough Bar, Caramel Nut Chew Bar, and Endulge Chocolate Candies.

The Court **DENIES** Defendant's Motion for Summary Judgment as to Counts II and IV regarding the "Only Xg Net Carbs" labels.

## CONCLUSION

The Court hereby **GRANTS-IN-PART and DENIES-IN-PART** Defendant's Motion for Summary Judgment. (Doc. 90).

**IT IS SO ORDERED:**
Date: July 12, 2018

                                            */s/ Douglas Harpool*
                                            **DOUGLAS HARPOOL**
                                            **UNITED STATES DISTRICT JUDGE**